ment or not—is left by him to the conjectures of his readers.

Of the evidence submitted by the libellants in the case in support of their charges or allegations of incompetency, and of misusing and overstraining the Middleton, it is sufficient here to say that it failed to substantiate those charges when weighed in the balance with the claimant's proofs in rebuttal. Assuming it is proven or admitted that the libellants are owners of 23-32 of the schooner, and the claimant owner of 2-32 only (the owners of the remaining 7-32 not entering appearance), and that the claimant, though requested, has refused to surrender possession, I must pronounce for the libellants, unless ground for a contrary judgment is found in the second defensive allegation of the claimant's answer, already stated in substance. On recurring to this it is seen that he claims to have been unanimously appointed captain of the Middleton in the winter of 1871, and in proof of this he exhibits the subscription list upon which the owners contracted for their several shares—reading thus: "We, the subscribers, agree to take or hold the respective shares set against our names of schooner Allen Middleton, Jr., said vessel to be commanded by Captain Samuel Gladding. Providence, November 30, 1870." Of this portion of the allegation and its proof I deem it sufficient to say that its relevancy and importance I have failed to perceive, inasmuch as the claimant proceeds to aver that subsequently, viz., on the 3d of March, 1871, a more formal agreement or contract between himself and his co-owners was made, in view of which, as he strenuously contends, the court should refrain from interfering "to aid either party in attempting to violate it." In the construction of this writing referred to, contended for by the claimant, I am unable to concur, and this whether it be considered separately from or in connection with "surrounding circumstances" concerning which testimony was received under objection. The co-owners of the vessel (the claimant among them), on the 3d of March, 1871, convened to ascertain the then will of the then majority in regard to the use of their joint property, and the action and will of the majority, so far as need here be inquired, was embodied in the following paper, to which the signatures of owners of 16-32, and no more, of the vessel (including the claimant owning 2-32) were attached:—

"It is agreed between the owners of schooner Allen Middleton, Jr., and Captain Samuel Gladding, as follows: Captain Gladding is to command the schooner so long as he gives satisfaction to the owners, and she is to be employed in the freighting business between ports not south of Cape Henry, and all northern and eastern ports. The division of gross earning is to be as follows:— Captain Gladding is to receive 3-5, and the owners 2-5 of the same. Captain Gladding to victual and man the vessel and to sail her, paying all port charges and all other charges appertaining to the running of said vessel, the owners only to pay such bills as are necessarily incurred in keeping the schooner in good running order. Captain Gladding is to make up his account after every trip, and after making deductions named above, he is to divide the balance among the owners. It is agreed that all bills made up for expenditure on the vessel shall, before being charged in Captain Gladding's account, be submitted to Mr. James M. Cross, of Providence, for his approval. Before the vessel leaves Providence all bills against the schooner are to be collected, and accounts made up by Captain Gladding and presented to owners for payment."

It is noticeable that of the seven signatures to this instrument (including Captain Gladding's) four are included among the libellants, and two have disposed of their shares.

For dissenting from the construction given by the claimant to this contract, it seems not necessary to state in full my reasons. It must suffice to say, that even did it bear the signature of each and every owner (instead of only half of them), and were they now, all of them, still owners (which is not the fact), and were there not now (which is the fact) owners who had no interest in the vessel in March last, I should nevertheless hold that the majority in interest is entitled to the possession of the vessel, either as against the claimant alone, captain and part-owner though he be, or against him and his co-owners of the minority. That the co-owners of a ship may not, by contracts and covenants or otherwise, estop themselves from exercising their rights in regard to the appointment or removal of a master, or the control and management of the ship, is not affirmed. It suffices to say that, under the facts in the case, the contract of March 3d, exhibited in proof, lacks more than one of the essentials of a contract of that species. Against any injury or wrong from mere wilfulness, caprice, or favoritism on the part of the majority owners of a ship, the master contracting can protect himself by bond, covenant, or otherwise; and if he neglect thus to guard his interests, himself, not the law, should he blame, if his employers dismiss him at a moment's notice, and without (so far as he may know or is entitled to know) any cause, reasonable or unreasonable.

---

## Case No. 2,679.

CHILDS et al. v. GLADDING et al.

[See Case No. 2,678.]